**UNITED STATES, Appellee,**

v.

**John P. JENSEN, Private, U.S. Army, Appellant.**

No. 53,417.
CM 446140.

U.S. Court of Military Appeals.

Dec. 14, 1987.

For Appellant: *Captain Stephanie C. Spahn* (argued); *Colonel Brooks B. La-Grua* and *Major Marion E. Winter* (on brief); *Lieutenant Colonel Arthur L. Hunt* and *Captain Pamela O. Barron.*

For Appellee: *Major Byron J. Braun* (argued); *Colonel Norman G. Cooper* and *Lieutenant Colonel Gary F. Roberson* (on brief); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle,* and *Captain John F. Burnette.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a general court-martial composed of a military judge alone at Camp Casey, Republic of Korea, in Feb-

ruary 1984. Contrary to his pleas, he was found guilty of attempted consensual sodomy and of rape, in violation of Articles 80 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 920, respectively. He was sentenced to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to pay grade E–1. The convening authority approved this sentence except for confinement exceeding 42 months. The Court of Military Review affirmed in a short-form opinion.

This Court granted review of these three issues raised by appellate defense counsel:

I

WHETHER THE REFUSAL OF THE MILITARY JUDGE TO ALLOW DEFENSE COUNSEL TO CROSS–EXAMINE THE PROSECUTRIX AND PRESENT EVIDENCE ABOUT THE PROSECUTRIX'S SEXUAL BEHAVIOR WITH THE COACCUSED GREER AND ANOTHER SOLDIER VIOLATED THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY PERMITTING CROSS–EXAMINATION INTO AN OFFER BY APPELLANT TO COMPROMISE MS. HAN'S CLAIM TO AVOID KOREAN CRIMINAL AND CIVIL ACTION AND BY ADMITTING THE SUBSEQUENT WRITTEN AGREEMENT INTO EVIDENCE.

III

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY FAILING TO ADMIT INTO EVIDENCE THE RESULTS OF APPELLANT'S POLYGRAPH EXAMINATION.

Oral argument was ordered only on the first two issues.

I

The military judge found appellant guilty of rape and attempted sodomy of Mrs. Han on the night of October 24, 1983. Mrs. Han, a deaf-mute Korean, sold flowers in bars to American servicemembers. Appellant, Specialist Four Greer, and Sergeant Williams were American servicemembers who were at the Drink Store Club, a bar outside Camp Casey, on the night in question. It was established at trial that Mrs. Han entered this bar and attempted to sell flowers and, failing to do so, left. The circumstances surrounding her departure were highly disputed.

Mrs. Han testified for the prosecution in this case through an interpreter of sign language and one of Korean. She testified that after leaving the bar alone, she was grabbed and dragged into an alley by five assailants. Four of them had sexual intercourse with her against her will by using force. The fifth attempted to force her to commit oral sodomy on him. She could not identify these assailants except to note that four were black and one white.

A pretrial statement by Jensen, a white male, was admitted against him as part of the Government's case. According to this document, he, Greer, and Williams had been drinking heavily that night at various bars, the last of which was the Skoosh (Drink) Store. Jensen and Greer left the Skoosh (Drink) Store and encountered Williams and a Korean girl in an alley. Williams or Greer grabbed her and took her into a smaller alley. Greer went into this alley with the girl, while Jensen and Williams waited in the bigger alley. Jensen looked into the alley and saw Greer and the girl engaging in sexual intercourse. When Greer came out of the alley, Jensen entered, attempted to have sexual intercourse with her, and achieved partial, but not full, penetration. The Korean girl "looked confused" and never indicated her willingness; but she did not resist, except when he attempted to have her perform oral sodomy on him. Moreover, she held his "penis in her hand and was guiding it."

Finally, he rejoined Greer, left Williams at the scene, and returned to his barracks.

Other government evidence was admitted concerning this incident and Mrs. Han's subsequent conduct in reporting this matter to the military police. In addition, physical evidence and medical testimony were received.

In his defense, Jensen testified that he had been drinking with Greer, Williams, a man named Palmer, and an unidentified Puerto Rican at the Drink Store late at night on October 24, 1983. Appellant first noticed Mrs. Han when she was walking out of the door with his barracks friend, Greer. He put on his coat and followed them into the street where he observed them walking with "their arms around each other's waist." He followed them through a big alley and eventually he observed them enter a smaller alley. He looked in the alley and saw them "making love"; and no force was apparent.

Appellant testified that he "[s]moked a cigarette" until Greer came out of the small alley. Jensen then entered the alley, at which time he observed "Sergeant Williams coming up the bigger alley." Mrs. Han "was laying on her back." According to Jensen:

She had her legs spread apart, sir, and I knelt down in between them. I took my penis out from my fly, sir, and when I leaned down to get on top of her, she took my penis in her hand and started fondling it and rubbing it on her pubic hair, sir. My penis only got about—not even semi-erect, just sort of erect.

After testifying that he did not remember if he actually penetrated her, Jensen said:

When I gave up trying to make penetration, sir, I sit up and got along side of her and I asked her to give me a blow job, and she looked at me like she didn't understand. So I put my hand on her shoulder, sir, and guided her head towards my penis. As soon as my penis was about a foot—foot and a half away from my—as soon as her head was about a foot and a half from my penis she

waived her hands like this and shook her head (the witness crossed his hands in front of his face, crossing at the area of the wrist) and I didn't want to make her do anything she didn't want to. So that's when Specialist Greer come by and said, "Jensen, we've got to go." So that's when I left Ms. Han in the alley, sir.

On cross-examination, Jensen admitted that he had never seen Mrs. Han before.

Specialist Greer testified that he had left the bar with Mrs. Han and proceeded to the small alley, where he engaged in consensual sexual intercourse with her. He then left her and observed Jensen enter the small alley. Greer had no conversation with appellant; but later he reentered the alley to tell appellant that they should go back to the barracks.

## II

In prosecutions for nonconsensual sexual offenses, Mil.R.Evid. 412, Manual for Courts-Martial, United States, 1969 (Revised edition), excluded "evidence of a victim's ... past sexual behavior with persons other than the accused," unless "offered ... upon the issue of whether the accused was ... the source of semen or injury" or unless "constitutionally required to be admitted." Relevance is the key to determining when the evidence is "constitutionally required to be admitted." *United States v. Dorsey*, 16 M.J. 1, 5 (C.M.A.1983); *see United States v. Colon-Angueira*, 16 M.J. 20, 30 (C.M.A.1983) (Everett, C.J., concurring). Generally, past sexual behavior with third persons is not relevant to the issues of the case. However, sometimes it may be, even though the issue does not concern "the source of semen or injury." *Cf. United States v. Dorsey, supra.*

In the present case, the Government claimed that Mrs. Han had first been raped in an alley by Specialist Greer, immediately thereafter raped by appellant, and finally raped by Sergeant Williams. Greer and appellant both testified that shortly before the alleged rapes, Mrs. Han danced with

Greer in a bar, where they were present along with other soldiers. While they were in the store, she grabbed Greer's penis; and, pursuant to this implied invitation, he and she walked out together, went to a nearby alley, and engaged in voluntary sexual intercourse.

According to Jensen, immediately thereafter he had attempted to have intercourse with Mrs. Han; but, despite her cooperation and encouragement, he failed because his drunkenness prevented him from having an erection and penetrating her vagina. Then, when she refused to engage in fellatio with him, he departed.

█ In connection with appellant's defense that the alleged victim consented to sexual intercourse, he was entitled to offer evidence that on two previous occasions, Mrs. Han had engaged in voluntary intercourse with Specialist Greer and with another soldier. As we interpret Mil.R.Evid. 412, it does not exclude such evidence.

Mil.R.Evid. 412(b)(2)(B) provides that "past sexual behavior with the accused" may be admitted in evidence when offered to show consent by the alleged victim. Presumably, the rationale is that a past sexual relationship with the accused tends to corroborate his defense that the victim also consented on the occasion which has given rise to prosecution.

If this be so, parallel reasoning would suggest that Mrs. Han's consent to intercourse with Greer on prior occasions tends to corroborate Greer's testimony at appellant's trial that she consented on this particular occasion, as well. In this event, the evidence of prior consent was very material to disprove the prosecution theory that Mrs. Han had initially been raped by Greer, then immediately thereafter by Jensen, and finally by Williams. The situation is very akin to that present in *United States v. Dorsey, supra,* where, because of the special circumstances, the alleged rape victim's prior intercourse with another person was material to the theory of defense.

Although the excluded evidence would chiefly be important as to Jensen's claim that Mrs. Han, at least initially, was willing to have intercourse with him, it also tends to support the defense theory that appellant reasonably believed she was willing to do so. *Cf. United States v. Carr,* 18 M.J. 297 (C.M.A.1984). If Mrs. Han consented to intercourse with Greer and then immediately thereafter was lying on her back in the alley with her legs widespread when appellant approached, there is corroboration as to his state of mind. Accordingly, for this reason as well, the defense proffer of this evidence was adequate; and the evidence should have been admitted.

III

During the Government's presentation of its case, trial counsel attempted to offer evidence of an agreement prepared in the Korean language but signed and executed by Greer, Jensen, and Williams. Pursuant thereto, they had paid $780 to Mrs. Han in return for her agreement that "I will not make a complaint against the assailants by civil or criminal law." When the agreement was first offered, the military judge refused to admit it in evidence. However, subsequently he permitted Greer to be cross-examined about it, and then he allowed the agreement to be received in evidence.

Appellate defense counsel contend that under Mil.R.Evid. 408—which renders inadmissible evidence of compromises and offers of compromise—the agreement should have been excluded and also that under Mil.R.Evid. 403, its probative value, if any, was far outweighed by its prejudicial effect. Contrariwise, appellate government counsel insist that efforts to buy out a criminal prosecution do not fall within the exclusion in Mil.R.Evid. 408. Moreover, they urge that the agreement with Mrs. Han to purchase her silence was not an offer of settlement but an attempt to obstruct justice and prevent prosecution and therefore was material in showing appellant's consciousness of guilt.

█ The military judge made much ado about the breadth of the agreement's language. In his view, the reference to "a

complaint against the assailants by civil or criminal law" would even include a complaint to American military authorities that might result in a court-martial. Moreover, he could not perceive any public policy that favored inclusion of such agreements within the scope of Mil.R.Evid. 408. In both respects, he erred.

The context of the agreement was made clear when, during direct examination of appellant, he was asked about signing the agreement and replied:

A. The way it was explained to me, sir, is that—Sergeant Williams told me a Korean contacted his wife saying that Ms. Han wanted $2,500.00 to drop the charges. I said, "I am not going to pay that much." And through negotiations between whoever and Mrs. Williams, the amount got dropped down to $800.00. That's when I came and asked you if I should pay it or not.

Q. And—okay, you basically—you were going to be prosecuted in a Korean court unless you paid, that was your understanding, right?

A. That's what you told me, sir.

Q. And what was the advice that I gave you?

A. You told me to pay my share of the money because it would get tossed out of Korean courts and you cannot represent me fairly enough in a Korean court. And if I got—things took [a] turn for the worse and I got convicted, I would not want to spend time in the Korean jail, sir.

The agreement was prepared in Korean and addressed to a Korean official—the Superintendent, Uijongbu Police Station. From all indications, it was not intended for American military authorities. Contrary to the military judge's view, then, it clearly only contemplated forestalling criminal and civil proceedings in Korean courts and was not directed to prosecution by court-martial.

It is both legal and customary in some Far Eastern and other countries for an accused to make monetary restitution to victims of alleged crimes as a means of avoiding both civil action and criminal prosecution. Undoubtedly, this practice is sometimes followed by American servicemembers overseas in order to avoid problems with local courts. Moreover, we are sure that this practice is well known to American military authorities—and probably is often encouraged by them. It even is likely that, on occasion, official funds have been advanced to pay alleged foreign victims and thereby extricate American servicemembers from imbroglios in the local courts. Moreover, we doubt that anyone would suggest that appellant's military defense counsel was engaged in obstructing justice by advising Jensen to go ahead with the agreement.

In such instances, the purpose is not sinister. Instead, the desire is to protect American servicemembers from trial in an unfamiliar legal system, where they will understand neither the language nor the procedure. No similar incentive exists with respect to paying a victim not to cooperate with prosecutors in a court-martial or in any American civil court.

Perhaps the military judge had forgotten that American national policy—expressed in a congressional reservation when the NATO Status of Forces Agreement was ratified—is that, insofar as practicable, our military personnel should be tried by courts-martial rather than by courts of a host country. *See United States v. Jordan,* 1 M.J. 334, 336 n. 2 (C.M.A.1976). With this in mind, American military authorities have consistently attempted to obtain waivers of foreign jurisdiction to try servicemembers.

To accept the Government's contention would create a future pitfall for American servicemembers stationed overseas. If under similar circumstances they decline to execute agreements of this type, they would be subject to criminal prosecutions in the local courts which otherwise could be avoided. If, however, they make such payments or enter into agreements like the one in the present case, they would risk the

later use of that agreement as evidence against them in a court-martial.

In this case, the agreement had no relevance, and its reception in evidence had a prejudicial effect. We cannot assume that the military judge disregarded the agreement in his role as a factfinder, since apparently he proceeded on the erroneous premise that it indicated a consciousness of guilt on Jensen's part.

## IV

We have concluded that the military judge's exclusion of the exculpatory polygraph evidence was within his discretion in light of the factors discussed in *United States v. Gipson*, 24 M.J. 246 (C.M.A.1987). Of course, this is not to say that he would have erred by admitting this evidence.

## V

■ In light of the military judge's error in excluding defense evidence that should have been admitted under Mil.R.Evid. 412 and admitting evidence that should have been excluded pursuant to Mil.R.Evid. 408 and 403, appellant was prejudiced. The evidence of guilt was not overwhelming, and there was some strong defense evidence. Indeed, it is noted that Specialist Four Greer was subsequently acquitted when he was tried by a court-martial with members. *Cf. Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

## VI

The decision of the United States Army Court of Military Review is reversed; the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

COX, Judge (concurring):

In the present case, the military judge ruled against appellant on three very close issues, thus creating difficult appellate questions. They are difficult because in a court-martial without members, the judge encounters the existence of much evidence that may or may not be relevant to *his* decision on the facts.

I think one might agree with me that there are two types of evidence that influence decisions:

—One I will call *essential* evidence, which is evidence that proves an element of the offense or proves the existence of a defense to a charge. Without this evidence, the proposition fails for want of proof. For example, if evidence of penetration is ruled out, there can be no finding of rape; if evidence of identification is ruled out, the accused is not tied to the offense. This type of evidence requires the most astute ruling from a military judge because a case rises or falls on its existence. If he erroneously admits or excludes *essential* evidence, he commits reversible error.

—The other I will call *credibility* or *impeaching* evidence, which is evidence that makes more or less probable the believability or existence of *essential* evidence. With this evidence, a military judge can give an accused a break and rule more generously in his favor. Why? Because the danger of unfair prejudice to the Government is greatly diminished. The military judge is in the unique position of knowing what evidence is persuasive to him. However, in a trial with court members, the weight or persuasiveness of the evidence would be unknown to him. I contend, therefore, that it is really immaterial to the Government's case what evidence a military judge admits or rejects in a trial without members if all that evidence can do is persuade him as to the believability or credibility of the essential evidence. It is the Government's *burden of persuasion* that has importance, not trial counsel's effectiveness in keeping evidence out of the record. I sometimes wonder why the Government even bothers to object to admission of this type of evidence in a trial before military judge alone.

In this case, the military judge struggled mightily with admissibility of the polygraph results and then ruled that they would not be accepted in evidence. Poly-

graph test results constitute a type of credibility evidence. *United States v. Gipson*, 24 M.J. 246, 252–53 (C.M.A.1987). Nothing was gained here by excluding from the record of trial the evidence which the judge had carefully considered already. Obviously he had rejected the evidence as being nonpersuasive or not relevant to him. Likewise, the evidence of the "buy off" was credibility evidence. Nothing was gained by letting it into evidence. *See United States v. Kinman*, 25 M.J. 99, 104 n. 3 (C.M.A.1987) (Cox, J., dissenting), where I state:

> I am not trying to give a military judge sitting alone a way to "cop-out" on tough rulings. I am just trying to emphasize that in a trial without members, a distinction should be made between that evidence which *proves* elements of an offense or defense, and evidence which persuades the military judge as to what to believe or disbelieve. The former evidence must be carefully ruled upon; the latter can be viewed with a broader perspective, particularly as it pertains to the right of an accused to present exculpatory evidence. If the evidence is in the record, the accused certainly cannot complain.

The reason I concur here is that the military judge consistently ruled out evidence which supported appellant's defense and gave heavy weight to the evidence of the "buy-out" agreement. I am not satisfied that these errors were harmless notwithstanding the fact that the judge could have ruled in appellant's favor on each issue and still found him guilty. All of his rulings went to credibility, not "essential" elements of the offense.

SULLIVAN, Judge (dissenting):

I disagree with Parts II, III, V, and VI of the principal opinion. I vote to affirm appellant's convictions.

### Issue I

The first question on appeal is whether the military judge erred in refusing to admit defense evidence of prior sexual acts of Mrs. Han or allow her to be cross-examined concerning this alleged conduct. *See United States v. Dorsey*, 16 M.J. 1, 4–5 (C.M.A. 1983); Mil.R.Evid. 412 (b)(1). This defense evidence would purportedly show that Mrs. Han consensually engaged in sexual intercourse with Greer in a hotel room about 1 month prior to the charged offenses. It would also purportedly show that Mrs. Han on two occasions in a latrine in a bar consensually engaged in sexual intercourse with Greer and a soldier named Jackson, one after another.

Appellant initially proffered the above evidence to show that he was probably telling the truth when he testified that he observed apparent consensual intercourse between Mrs. Han and Greer. Defense counsel acknowledged, however, that appellant had no knowledge of these alleged prior sexual acts between Mrs. Han and Greer. Accordingly, proof of their occurrence would not impact on the way appellant perceived the events between them on the night in question. *Cf. United States v. Colon-Angueira*, 16 M.J. 20, 30 (C.M.A. 1983) (Everett, C.J., concurring). Moreover, appellant did not have access to the inner recess of the victim's mind. Any perception on his part as to her subjective willingness to engage in sex with Greer would depend on her manifestations of consent through particular conduct or action. *See generally* Comment, *Towards a Consent Standard in the Law of Rape*, 43 U.Chi.L.Rev. 613, 618–20 (1976). This defense proffer of relevance was inadequate.

In addition, appellant's averred belief that Mrs. Han had consensual sex with Greer was not a material fact with respect to the honesty or reasonableness of his averred belief that she was later consenting to sex with him. A rational inference does not arise from the willingness to engage in sex with one person that this same willingness exists with respect to a different person. A belief to the contrary is neither honest nor reasonable. *See United States v. Hollimon*, 16 M.J. 164, 166 (C.M.A.1983).

Turning to the evidence of prior sex acts with Greer and Jackson, the military judge did not abuse his discretion in excluding it. Defense counsel's basic assertion was that this evidence showed a willingness or disposition on the part of Mrs. Han to engage in consensual sexual intercourse with Greer and a friend in succession in or near bars. Accordingly, he argued that such a disposition was relevant to show that she probably consented to sex with Greer and appellant in the alley on the night in question. *See generally United States v. Pickens*, 17 M.J. 391 (C.M.A.1984); *United States v. Hollimon, supra.*

Such an argument might have merit if additional circumstances surrounding the purported incidents with Greer and Jackson were averred: In other words, circumstances which would provide a rational basis to infer that a person's status as a friend of Greer and the act's situs in or near a bar had some bearing on her decision to consent to sex with Greer and Jackson. *See United States v. Elvine*, 16 M.J. 14 (C.M.A. 1983). Expert testimony on this issue would also have been most helpful. *United States v. Colon Angueira, supra* at 30 n. 2. Even if such conduct by itself might justify an inference of a sexual disposition of some type, its applicability to the circumstances posited by defense was tenuous. In this regard it must be noted that defense counsel did not aver that Mrs. Han knew appellant was Greer's friend. Moreover, appellant testified that he did not know Mrs. Han, and Greer did not testify that he ever disclosed his friendship with appellant to Mrs. Han on the night in question. The similarity of consecutive sex acts is not alone sufficient to require admission of this evidence.

Finally, appellate defense counsel has proffered an additional theory of relevance which would purportedly justify admission of this evidence at appellant's court-martial. He asserts in substance that Mrs. Han testified that she was forcibly raped by four men on the night in question. He then argues that the evidence of prior consensual sexual intercourse between Mrs. Han and Greer was clearly relevant to show that one of these men, Greer, engaged in consensual intercourse with her that night. Mil.R.Evid. 412(b)(2)(B).[1] Accordingly, such evidence would substantially contradict her testimony of a gang rape, undermine her credibility, and destroy the Government's case. *See generally Government of Virgin Islands v. Jacobs*, 634 F.Supp. 933 (D.Virgin Islands 1986).

This theory of admissibility was not advanced at trial, *see* Mil.R.Evid. 103(a)(1), and I am most reluctant to sustain or overturn a conviction on the basis of appellate hindsight. *See United States v. Rappaport*, 22 M.J. 445, 447 (C.M.A.1986). In any event, Greer himself testified that Mrs. Han consented to sexual intercourse with him prior to her encounter with appellant. Moreover, appellant testified that he saw what appeared to be a consensual sexual act between them. They also both testified to conduct of Mrs. Han prior to her sexual act with Greer in the alley which contradicted her testimony. In this context no plain error exists in the judge's failure to *sua sponte* admit additional evidence on this issue. *See* Mil.R.Evid. 103(d).

*Issue II*

The second issue in this case is whether the military judge erred in permitting Greer to be cross-examined about an agreement with Mrs. Han to "not make a complaint against" her "assailants by civil or criminal law." A copy of this agreement in Korean and its translation were later admitted by the military judge. Defense counsel objected to this cross-examination and admission of these exhibits on the basis of Mil.R.Evid. 403, 408, and 409.

The written statement memorializing this agreement identified Mrs. Han as the victim and appellant, Greer, and Williams as the assailants. It then states:

I am deaf and mute and a housewife, and have been selling flowers to U.S. person-

---

**1.** Since Greer was not the accused in this case, admissibility of this evidence at appellant's court-martial is controlled by Mil.R.Evid. 412(b)(1).

nel. About 0030 hours, 25 October 1983, at an alley behind the Pizza Club located at 541, Saengyon 4–dong, Tongduchon City, Korea, I was raped and assaulted. A mutual agreement has been made between myself and the assailants. I will not make a complaint against the assailants by civil or criminal law, and I submit this written agreement.

The statement signed by Mrs. Han as well as by appellant, Greer and Williams, was addressed to Superintendent, UIJONGBU POLICE STATION, and was dated October 28, 1983.

Initially, it must be noted that Mrs. Han was questioned by trial counsel about receiving money because she was raped. She testified that sometime after this incident, she was visited by a lady who asked her for an agreement. She stated that she was reluctant at first but was persuaded by the lady to use the money to take care of medical bills. She also identified her mark on the exhibit. Defense counsel made no objection to this line of testimony.

Trial counsel later cross-examined Greer about this agreement, and he admitted that he, Williams, and appellant signed the agreement. Defense counsel objected on the grounds that this agreement was analogous to an offer of settlement, evidence of which was inadmissible under Mil.R.Evid. 408. He also referred to it as an offer to pay medical expenses, evidence of which was inadmissible under Mil.R.Evid. 409. Finally, he stated it was evidence of "a buy-off of Ms. Han" and was unduly prejudicial under Mil.R.Evid. 403.

Mil.R.Evid. 408 makes a distinction between evidence of a compromise of a claim for valuable consideration when offered to show "liability for or invalidity of the claim or its amount" and when offered for some other purpose. One of the permissible pur-

poses for offering such evidence may be to show "an effort to obstruct a criminal investigation or prosecution." Trial counsel offered evidence of the agreement which appellant, Greer, and Williams entered into with Mrs. Han to show their attempt to prevent her from testifying at a court-martial against them. The broad language of this agreement with its express inclusion of "criminal actions" was a sufficient basis for the judge to conclude that such evidence was relevant for this purpose and not barred by Mil.R.Evid. 408.

Also Mil.R.Evid. 409 did not bar admission of this evidence to show an effort to obstruct a criminal investigation or prosecution. Admittedly, Mrs. Han testified that she was convinced to sign the agreement and accept the money to pay her medical expenses. However, the *quid pro quo* was her agreement "not [to] make a complaint against the assailants by ... criminal law." This aspect of the agreement exceeds the scope of Mil.R.Evid. 409 and accordingly is not barred by it.

Appellant's third objection to this evidence is that it was more prejudicial than probative and, accordingly, its admission was barred by Mil.R.Evid. 403. As noted above, evidence of this agreement was relevant to show that appellant and his coaccused attempted to prevent Mrs. Han from testifying against them at a court-martial. Such a fact, if established,[2] would be highly probative of their credibility as witnesses and might also reflect a consciousness of guilt on their part. Appellant has not identified any undue or unfair prejudice which might additionally flow from this evidence. Accordingly, no abuse of discretion exists in the judge's admission of this evidence. *See United States v. Abel,* 469 U.S. 45, 51–53, 105 S.Ct. 465, 468–470, 83 L.Ed.2d 450 (1984).

---

**2.** Appellant testified that he signed this agreement and paid the money to Mrs. Han on advice from his military attorney. He further testified that he understood the agreement applied to actions in Korean courts where he was "worried about getting a fair trial."