UNITED STATES, Appellee,

v.

**Private First Class Edwin C. KELLY,
239–25–5087, United States Army,
Appellant.**

**ACMR 9001759.**

U.S. Army Court of Military Review.

30 Oct. 1991.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain James M. Heaton, JAGC, Captain Emmett G. Wells, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Thomas E. Booth, JAGC, Major Paul E. Jordan, JAGC (on brief).

Before NAUGHTON, HOWELL and JOHNSTON, Appellate Military Judges.

OPINION OF THE COURT

JOHNSTON, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of rape and unlawful entry, in violation of Articles 120 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 920 and 934 (1982). The appellant was sentenced to a bad-conduct discharge, total forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved only so much of the forfeitures as provides for forfeiture of $482.00 pay per month for six months, and otherwise approved the sentence.

After carefully examining the record of trial, we have determined that the military judge erred to the substantial prejudice of the appellant by improperly excluding relevant evidence based upon his erroneous

interpretation of the "rape shield" provisions of Manual for Courts–Martial, United States, 1984, Military Rules of Evidence 412 [hereinafter Mil.R.Evid.].[1]

At trial the appellant sought to defend against the rape charge by alleging that the prosecutrix consented to his sexual advances. Under the defense theory, the prosecutrix acted toward the appellant and other males, both verbally and physically, in a sexually provocative, flirtatious manner. Based upon her conduct on the evening in question, and her similar conduct in the recent past, the defense contended that she was receptive to sexual intercourse in general, and receptive to sexual intercourse with the appellant in particular. Thus, from the appellant's perspective at trial, the prosecution would not be able to prove beyond a reasonable doubt the element of force and lack of consent in the rape charge. Alternatively, the appellant would be able to claim as an affirmative defense an honest and reasonable mistake of fact as to her consent.

### I. Motion in limine.

The trial counsel made a motion in limine to block admission of evidence concerning the victim's past sexual behavior and reputation.

During the hearing on the motion, the appellant testified that over the past two years he had observed the prosecutrix, Specialist (SPC) L, behaving in a sexually aggressive manner when she was intoxicated. He stated that she was intoxicated practically every weekend.

The appellant further testified that on one occasion when he and several other male soldiers were gathered together in front of the barracks socializing and drinking, SPC L stated "I need to get fucked" to those assembled. On yet another occasion, the appellant and several other male soldiers were in the unit day room when SPC L said, "I haven't had sex in a while. Does

anyone want to come downstairs and fuck?" The appellant also testified about a party being held in his room where SPC L and a male soldier were lying on a bed in plain view. According to the appellant, SPC L had been drinking and was "all over" the soldier, giving him "hickies" and "fondling him."

Additional testimony was presented during the hearing about SPC L's behavior toward a SPC Hubbard while at the Noncommissioned Officers (NCO) club during the night in question. SPC Hubbard testified that SPC L danced "really close to me up against me." He explained that "she would turn around and rub her buttocks into me." He also testified that she "reached her hands around and grabbed me in the genital area." The appellant testified that he observed SPC L fondle SPC Hubbard while they were dancing. SPC L apparently became annoyed that SPC Hubbard was not responding to her overtures as she expected.

After hearing the proffered testimony, the military judge applied the "rape shield" provisions of military practice, and excluded the prosecutrix's statements about wanting sex made before the alleged attack, as well as testimony concerning her sexually aggressive behavior towards persons other than the appellant. Thus, he excluded evidence that would have shed light on the issue of whether SPC L consented to the appellant's sexual advances. The ruling also excluded relevant evidence that would have explained the appellant's perception of SPC L's willingness to engage in sex with him as a reasonable mistake of fact.

### II. Facts presented to the court members.

The appellant and the prosecutrix, SPC L, were assigned to the same company-sized unit and had been friends for approxi-

---

1. The following issue was specified by the court: WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S PREJUDICE BY EXCLUDING TESTIMONY CONCERNING THE PROSECUTRIX'S PUBLIC STATEMENTS ABOUT WANTING SEX, HER OPEN SEXUALLY PROVOCATIVE BEHAVIOR ON 17 NOVEM-

BER 1989, AND HER AMBIVALENCE ABOUT REPORTING THE INCIDENT. *See United States v. Jensen,* 25 M.J. 284 (C.M.A.1987); *United States v. Carr,* 18 M.J. [297] (C.M.A.1984); *State v. Colbath,* [130 N.H. 316] 540 A.2d 1212 (1988) (Souter, J.),

mately two years prior to the incident that resulted in criminal charges. In November 1989, the appellant, SPC L, and a sergeant returned late in the evening to their barracks in Baumholder from a field exercise at Grafenwoehr. They were to receive a redeployment briefing the next day. They all slept fully clothed on cots in the unit day room. The next day SPC L moved her gear in with another female, SPC Barrett, who had an extra bed in her barracks room.

After the redeployment briefings were completed and the duty day was over, the prosecutrix stopped by the barracks room of a SPC Hubbard to see what he and the appellant were going to do later that evening. Someone proposed that they go out for dancing and drinking at the local NCO club. SPC L said "Well, I don't know if I'm going to go." She was concerned that all she had to wear were "sweats." In response to an unspecified suggestive comment about "sweats," she stated "Oh, what do you mean, easy access?" Then the appellant stated "It's time for you to give it up. You're going to get fucked up and fucked." SPC L did not object to the comment but replied "I'll see you later" and departed.

Later that same evening, the appellant stopped by SPC Barrett's room, which she and SPC L were sharing, in the company billets to see if she and SPC L would be going to the NCO club. SPC L told him "I'm not sure but probably." SPC L and SPC Barrett remained in the room, drinking beer and talking. SPC L testified that she consumed three beers and several slices of pizza.

The appellant, SPC Hubbard, and several other soldiers went to the NCO club at 2130 hours. Both SPC Barrett and SPC L arrived at the club at 2200 hours. After sitting through several dances and drinking a beer, SPC L invited the appellant to dance with her. She testified that they were dancing "very close" for approximately fifteen minutes. The appellant testified that "at first it was like a normal dance and then she started—she turned around and she placed her buttocks in my groin and she was reaching back behind me and

grabbing my buttocks and then she went around me and started dancing behind me and she was reaching in front of me. She had her hands on my groin area." SPC L admitted touching the appellant's buttocks and rubbing up against his genitalia while they were dancing. The appellant testified that she asked him "when was the last time that I fucked?" When he replied that the last time was when he was on leave, she smiled and they both laughed.

One of the other soldiers who observed the couple was asked to describe how they were dancing. He replied:

A. Well, it was more how [SPC L] was dancing. She was dancing really, you know, aggressively....

Q. Can you just describe what you saw?

A. Yeah, well, she was dancing like really like passionately, too, you know? Like kind of getting behind Kelly and grabbing his butt and then she would turn around and she would put her butt, you know, up next to him.

Q. Where at next to him?

A. The genital region.

Q. Did you see her make contact with him in his genital region?

A. Yeah.

When they were not dancing SPC L and the appellant were seated next to each other at a round table with several other soldiers. The appellant testified that while they were seated at the table SPC L was rubbing her feet on his leg and touching his thighs with her hands.

When the club closed the appellant noticed that SPC L was no longer present. He returned to the unit area to look for her. At that point, the appellant's version of the facts and the prosecutrix's testimony diverge sharply.

The appellant testified that he found SPC L sleeping in SPC Barrett's room, lying on a bed while fully clothed. When he awakened her, she kissed him. They assisted each other in undressing and had sex in several positions. Although the appellant's testimony and statements to criminal investigators about the events in the room differed slightly, he continuously main-

tained that she consented to having sex with him. The appellant claimed that SPC L was dressing herself as he departed.

SPC L, on the other hand, testified that she returned to the barracks and passed out on the bed while fully clothed. She was wearing a sweatshirt, T-shirt, underwear, jeans, and socks. She was awakened by the feeling of a penis inside her vagina. She then rolled over, "hoping to get away from this person." When questioned about what happened after she rolled away, SPC L replied "Eventually—well, I rolled away and I passed back out, so, you know. When I was still somewhat aware, you know, when I was aware of what was going on, I still felt him inside of me." The next thing she remembered was hearing the door opening and seeing a "blue blur" going out of the door. Almost immediately thereafter SPC Barrett entered the room. At that point SPC L testified she was wearing jeans and a sweatshirt. She denied dressing herself and claimed not to remember being dressed by the appellant. Her underwear and T-shirt were lying on the floor next to the bed. SPC L testified that she went to the latrine and passed out.

SPC Barrett testified that she left the NCO club at closing time and returned to her room in the barracks. She passed the appellant in the hallway just outside of her room. SPC Barrett stated that she was not surprised to see the appellant coming out of her room. She asked him if SPC L was in the room and he replied that she was. As she entered the room, she noticed that SPC L was getting out of the bed. SPC L's eyes were red, she looked as if she had been drinking, and the buttons on her jeans were undone. She did not appear to have been sleeping. SPC Barrett testified that SPC L appeared to be mildly drunk. A blue shirt that belonged to the appellant was lying on a table in the room.

SPC Barrett quickly assessed the situation and then questioned SPC L in a loud voice, "Why did you fuck him?" SPC L did not reply, but gave SPC Barrett a look of "disgust." SPC Barrett told SPC L to leave because she wanted to be alone with her boyfriend. SPC L then went into the latrine and did not return for several hours. The next morning SPC L told SPC Barrett that if she was pregnant, she was going to "make him pay."

III. The military "rape shield" law.

■ The so-called "rape shield" law in military practice, Mil.R.Evid. 412(a) and (b), excludes both reputation or opinion evidence of past sexual behavior of the alleged victim, as well as specific instances of sexual conduct. According to the Drafters' Analysis, these provisions are taken from Federal Rule of Evidence 412 and are intended to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations that were common at one time to prosecutions of such offenses. Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 412 analysis, app. 22, at A22–34 [hereinafter Mil.R.Evid. 412 analysis]. The rule is also directed at encouraging the reporting and prosecution of sexual offenses.

Military Rule of Evidence 412(a) specifies that *reputation or opinion evidence* of the past sexual behavior of an alleged victim of a nonconsensual sexual offense is not admissible. This means that defense counsel are prohibited from asking questions about the victim's general morality, sexual life style, or sexual habits. *See* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 521 (3d ed. 1991). The rule is consistent with the prohibition in civilian practice against "smearing" the victim, i.e. a general attack on the credibility based on the questionable premise that a reputation for immorality can be equated with untruthfulness. Tuerkheimer, *A Reassessment and Redefinition of Rape Shield Laws,* 50 Ohio St. L.J. 1245 (1989).

■ Despite the purported absolute ban in Mil.R.Evid. 412(a), the Court of Military Appeals has indicated that a victim's reputation in sexual behavior matters, if known by an accused, might be admissible under some circumstances, because of the requirements of Article 46, UCMJ, 10 U.S.C.

3846,[2] and the provisions of the fifth and sixth [3] amendments to the Constitution of the United States. *See United States v. Elvine,* 16 M.J. 14, 18 (C.M.A.1983). Chief Judge Everett has noted that some otherwise excluded evidence might be admissible if offered at trial for the express purpose of demonstrating a mistaken belief, on an accused's part, that the prosecutrix had given her consent. *Id.* at 19. Evidence that is constitutionally required to be admitted on behalf of the defense remains admissible notwithstanding the absence of express authorization in Mil.R.Evid. 412(a). *See United States v. Hollimon,* 16 M.J. 164 (C.M.A.1983).

Military Rule of Evidence 412(b) specifies in pertinent part that evidence of a victim's behavior other than reputation or opinion evidence, i.e. *specific conduct,* is also not admissible unless "constitutionally required to be admitted." The Drafters' Analysis states that the rule recognizes the "fundamental right of the defense under the fifth amendment to the Constitution of the United States" to present defense evidence that is relevant. Mil.R.Evid. 412 analysis at A22–34; *see also United States v. Saipaia,* 24 M.J. 172 (C.M.A.1987); *cert. denied,* 484 U.S. 1004, 108 S.Ct. 694, 98 L.Ed.2d 647 (1988). The Drafters' Analysis specifically states the Committee intends that "the Rule not be interpreted as a rule of absolute privilege. Evidence that is constitutionally required to be admitted on behalf of the defense remains admissible notwithstanding the absence of express authorization in Rule 412(a)." Mil.R.Evid. 412 analysis at A22–34.

In order to persuade the court that evidence of past sexual behavior should be admitted, the defense must show that the evidence is relevant, material, and favorable to the defense. *See United States v. Hicks,* 24 M.J. 3, 10 (C.M.A.1987), *cert. denied* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987). The court has also stated that "primarily Mil.R.Evid. 412 is a rule of relevance." *See Saipaia,* 24 M.J. at 175. In testing for relevance, the court must decide whether the evidence has *"any* tendency to make the existence of *any* fact ... more probable or less probable than it would be without the evidence." Mil. R.Evid. 401; *see United States v. Dorsey,* 16 M.J. 1, 5 (C.M.A.1983).

■ In this case, the appellant showed that the prosecutrix's past sexual conduct was relevant, material and probative. Each of the incidents involved the appellant and was similar to the events that led to the charges against him. The statements about wanting to "get fucked" or to "come downstairs and fuck" tended to show that the prosecutrix sought sex indiscriminately. The statements also were relevant to show the reasonableness of the appellant's belief that the prosecutrix consented to his sexual overtures. In addition, these statements were similar to the comments the prosecutrix made to the appellant while they were dancing at the NCO club.

The evidence that SPC L was drunk practically every weekend, and behaved in a sexually aggressive manner toward males when drunk was also relevant, material, and probative. The evidence tended to show that she was engaged in a pattern of behavior rather than unrelated incidents. *See Hollimon,* 16 M.J. at 166 (evidence that the victim consented to sex freely and indiscriminately would be relevant to prove she acted in conformity with her habit).

The Court of Military Appeals has previously suggested that the grabbing of genitalia is an implied invitation to have sex. *See United States v. Jensen,* 25 M.J. 284, 287 (C.M.A.1987). Likewise, touching the buttocks and genitalia and rubbing up against the genitalia in a provocative manner as SPC L did to the appellant and SPC Hubbard, may have been an implied invitation to have sex. The excluded testimony was relevant to show that SPC L was ap-

---

2. "The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."

3. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor...."

parently receptive to further sexual advances by SPC Hubbard or the appellant.

 The purpose of the military rape shield provisions, to protect the victim from harassment and humiliation, is not served by applying them to the facts of this case. The victim's public statements and actions toward other soldiers should not have been excluded by the military judge. As Judge Souter (now Justice Souter) has noted, the public behavior of a prosecutrix is' significant in weighing the probative value of particular evidence against the prejudice to her privacy or to rational decision making by the jury. *State v. Colbath*, 130 N.H. 316, 540 A.2d 1212 (1988).

We agree with Judge Souter that evidence describing the prosecutrix's open, sexually suggestive conduct in the presence of the public has far less potential for damaging her reputation than would revelation of what she may have done behind a closed door. Evidence of public displays of general interest in sexual activity can be taken to indicate a receptiveness to sexual advances that cannot be inferred from evidence of private behavior with chosen sex partners. *Id.* 540 A.2d at 1216; *see People v. Wilhelm*, 190 Mich.App. 574, 476 N.W.2d 753 (1991) (a defendant should be permitted to introduce evidence of the complainant's nearly contemporaneous sexually provocative behavior in public as bearing on the issue of consent).

The public nature of the comments by SPC L and the public settings of her episodes of sexually aggressive conduct are critical to our determination that the military judge erred to the substantial prejudice of the appellant when he excluded relevant evidence bearing on the issue of consent. *See State v. Niles*, 108 Or.App. 735, 817 P.2d 293 (1991) (consensual sex with other persons in private was properly excluded at rape trial where consent was an issue). While the evidence in this case did not fall within the exceptions stated in the so-called "rape shield" provisions, the evidence in question should have been admitted and its exclusion substantially preju-

diced the appellant by depriving him of his constitutional rights to confrontation and cross-examination.

## IV.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge NAUGHTON and Judge HOWELL concur.