**172**

UNITED STATES, Appellee,

v.

Ene SAIPAIA, Private First Class U.S. Marine Corps, Appellant.

No. 47,178.

NMCM 82 4371.

U.S. Court of Military Appeals.

July 6, 1987.

For Appellant: *Lieutenant Commander William A. Decicco, JAGC, USN* and *Lieutenant Lois B. Agronick, JAGC, USNR* (on brief); *Lieutenant Commander Georgia L. Winstead, JAGC, USNR.*

For Appellee: Captain W.J. Hughes, JAGC, USN and Lieutenant Steven P. Benson, JAGC, USNR (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

I

At appellant's general court-martial on charges of rape and forcible sodomy,* defense counsel timely filed a "Notice of Intent" to introduce evidence of the victim's past sexual experience. *See* Mil.R.Evid. 412(c)(1), Manual for Courts-Martial, United States, 1969 (Revised edition). The defense "intent" in this regard went to evidence of a large number of acts of prostitution and to expert testimony by psychiatrists who had seen the victim and who would address the direct relationship between her sexual past and her psychotic illness, as well as the direct relationship between her sexual history and the "fantasy" of her rape by appellant. The defense motion explained:

---

* Despite his pleas, appellant was convicted as charged, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925, respectively. Therefor, the court-martial sentenced him to a dishonorable discharge, confinement for 20 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the trial results, and the Court of Military Review affirmed in a divided opinion. This Court granted review of an issue questioning "whether the military judge erred by denying appellant the opportunity to cross-examine the alleged victim on her past sexual conduct."

The defense feels that Mrs. Ricks' borderline psychosis, with its underlying basis in her sexual history, constitutes a bias, prejudice and motive to misrepresent ... Sexuality and sexual matters constitute Irene RICKS' single and most effective means of expressing herself, of communicating with others. Her cry of "rape" (not made ... until 26 October 1981) is a cry for attention, not a statement of the occurrence of an actual event. It is the manifestation of a hysterical personality and a borderline psychotic condition.... The defense should be given the opportunity to demonstrate Mrs. RICKS' possibly subconscious, and thus, all the more insidious, motive to misrepresent —her sexually based borderline psychosis and hysterical personality condition.

Predictably, trial counsel resisted the motion, citing Mil.R.Evid. 412(b).

Finally, the military judge ruled as follows:

> I have ruled that the doctors, three doctors may testify. Further, I will permit the doctors to testify that in effect the alleged victim has ... because of her focus upon or preoccupation with or concern with sexual matters, is therefore likely to make any false complaint or to lodge a false complaint and to do so about a sexual matter. In effect, excluding specific reference to the proffered areas of prostitution, number of contacts, and receipt of gifts. That ruling presumes that that opinion is itself admissible and, further, that the doctors find it necessary to make reference to that in support of their opinion. With regard to relation of specific acts by related ... related by the doctors, I will sustain 412 objection to that testimony at this time and, likewise, I will preclude cross-examination of the victim concerning those same matters. At this juncture it is my view that those specific acts, whether testified to by the doctors or by the victim, are not relevant and that even if marginally relevant that the probative value of that evidence is far outweighted [sic] by the danger of unfair prejudice and confusion of the members. That constitutes my ruling.

Consistent with this ruling, the military judge permitted neither cross-examination of Mrs. Ricks nor extrinsic evidence concerning her sexual history. During cross-examination, however, the defense did attempt to probe the victim's past sexual history after the Government, during direct examination, had elicited testimony about her rape by an uncle at age 8 or 9. When trial counsel again objected on the basis of Mil.R.Evid. 412, defense counsel responded that he believed trial counsel had opened the door to this area. Trial counsel, in turn, explained that it had been his intent to explain Mrs. Ricks' delay in reporting the instant rape by the effect of her childhood experience. The defense reiterated:

> It seems that the Government was trying to, at least, infer to the members that Mrs. RICKS' having been raped once before in her life, having gone to her mother, and, in effect, been criticized by her mother for having been involved in this, would be leary of reporting a second rape. And that's to explain why the ten-day delay in this case. We also feel that evidence of her past sexual history shows that she is quite familiar with sex and sexual matters. It is rather mundane for her and that that would not be a reason for the members to infer that she delayed reporting the rape. That's another reason we thought we should be allowed to go into her past sexual history.

> MJ: My ruling stands. I have considered the scope of the government's direct examination and the question asked. It is not presently within the proper scope of cross-examination.

The military judge did permit, though—as he indicated he would—the expert psychiatric testimony offered by the defense. First, Dr. Kent Jordan, a board-certified psychiatrist in California, testified on the basis of his twenty-four sessions with the victim over a 2 1/2–month period, each

session lasting from an hour to three hours. His diagnosis of Mrs. Ricks was tripartite: sociopathic personality, histrionic personality disorder, and borderline psychosis. Dr. Jordan elaborated on each as follows:

[A sociopath is] a person that has very little or no conscience, no compunction to commit immoral or asocial acts, almost no concern for other ... the welfare of other human beings, a tendency to manipulate other people to obtain one's own advantage at the expense of other people. That's sociopathic. A hysterical or histrionic personality is ... they're usually women and they are dramatic. They tend to exaggerate, distort reality to some extent but not grossly, typically, and they are very seductive.

\*     \*     \*     \*     \*     \*

A psychotic is an individual that is diagnosed as psychotic and they're out of contact with reality the majority of their waking hours. But borderline psychosis is somebody who intermittently decompensates into a state of being out of contact with reality, with stress.

Important to the defense, Dr. Jordan was allowed to amplify his diagnosis of Mrs. Ricks regarding the bases therefor. His conclusion that she is a sociopathic personality was based on her history of prostitution and her history of extracting a great deal of money from men without regard for their welfare. Indeed, "she somewhat delighted, and took pleasure out of humiliating men, hurting men, debasing men, and ruining them." He also stated, in this connection, that he had verified Mrs. Ricks' relationship with three of the men she had named and that she was wanted on charges in numerous states, about which she was unconcerned except for the possibility of getting caught.

As to Dr. Jordan's diagnosis that Mrs. Ricks was a histrionic personality, he testified that she had been seductive in both her speech and her mannerisms and that she told stories in order to center the attention of others on herself. In his opinion, she felt quite strongly this need for attention.

Finally, the basis for Dr. Jordan's diagnosis of Mrs. Ricks' borderline psychosis was his observation of her regression "to an infantile state in which she had delusions that she was a" baby who needed to be held and carried and who wanted to suck someone's breast. Dr. Jordan revealed that he had observed this change on about ten different occasions during their sessions. Further, Dr. Jordan testified:

[S]he would become panic-stricken over fears that the people all around her were out to get her. That telephone calls that her husband would monitor and listen to that he said were innocent, she would interpret as being threats to her life. And that, when strangers on the street would look, she would think that they were some agents of men that she had done ... that she had gotten money out of and hurt. That they were following her. That they were going to get her. Or that the police were trailing her everywhere she went.

Dr. Jordan added that such a person's tendency to lose contact with reality increased at night.

The second psychiatrist to testify was Dr. Krishna Kumar, who saw Mrs. Ricks three times, for about an hour and a half each time. He stated that he had formulated a diagnostic impression of Mrs. Ricks resting between hysterical personality with borderline psychosis or hysterical neurosis. He submitted that "[s]he had demonstrated psychopathology" in every important diagnostic category, including "feelings and emotions; ... thought content and thought process; ... impulse and impulse control; ... needs; ... perceptions; ... self-concept; ... behavior; ... and interpersonal relationships." Moreover, Dr. Kumar recited occasions when Mrs. Ricks had lied to him; and, when faced with the falsehoods, she had denied them and, instead, had insisted that they were true.

## II

■ Notwithstanding the general rule against receiving evidence of the past sexu-

al behavior of the victim of a nonconsensual sexual offense, *see* Mil.R.Evid. 412(a) and (b), this evidence is admissible when "constitutionally required." Mil.R.Evid. 412(b); *United States v. Dorsey*, 16 M.J. 1 (C.M.A. 1983). *See United States v. Hollimon*, 16 M.J. 164 (C.M.A. 1983); *United States v. Colon-Angueira*, 16 M.J. 20 (C.M.A. 1983); and *United States v. Elvine*, 16 M.J. 14 (C.M.A. 1983). Primarily, Mil.R.Evid. 412 is a rule of relevance, specifically concerned with the relevance of the victim's sexual past in a trial for a sex offense. *See United States v. Colon-Angueira, supra* at 29 (Everett, C.J., concurring).

■ Although this court-martial preceded our cited decisions in this field, the military judge correctly walked the line of relevance as to the proffered evidence. *See generally* Mil.R.Evid. 402 ("All relevant evidence is admissible ... Evidence which is not relevant is not admissible"). The defense theory was that Mrs. Ricks was preoccupied with sexual activity and manipulation of men and that this contributed to psychotic disorders, manifested by a false sexual accusation against appellant. The military judge allowed the defense to support this theory by offering expert testimony about Mrs. Ricks' psychological makeup. Moreover, the experts were permitted to explain the reasons for their opinions about her various disorders. In doing this, the witnesses referred to some of the same matters as to which the defense counsel wished to cross-examine Mrs. Ricks. For example, Dr. Jordan made clear that her history of prostitution was a significant factor in reaching his diagnosis.

Although appellant did not testify himself, the defense vigorously contested the claim that Mrs. Ricks had been raped and sodomized by anyone. We do not perceive how the development of this defense was hindered by the military judge's evidentiary rulings. Moreover, the defense urged that, if an offense had occurred, appellant was not the perpetrator: He had been misidentified by Mrs. Ricks. Certainly, as to this theory, the defense could not have been affected by the exclusion of evidence under Rule 412. Her activity as a prostitute would not tend to show why she had accused one person, rather than another, of committing crimes against her.

If Saipaia had conceded that he had had sexual intercourse with Mrs. Ricks but had claimed that it was consensual and that she had accused him of rape because he had failed to pay her price, then her prior activity as a prostitute would have been especially relevant. However, no such contention was made by the defense; and, indeed, it would have been at odds with the argument that appellant had been misidentified by her.

The defense seems to have had in mind that, if Mrs. Ricks had been cross-examined about her sexual past, her answers and her demeanor while responding would have demonstrated that she was mentally deranged. Apparently, they anticipated that her ego would collapse if she were questioned in this manner. Counsel is entitled to reasonable latitude in cross-examining a witness, so that the factfinder will have a better basis for evaluating the witness' ability to observe, remember, and describe events and her credibility. However, we doubt that a defense counsel should be allowed to embarrass or humiliate a witness merely so that the factfinder may observe how the witness reacts to such stress. Thus, in our view, the cross-examination of Mrs. Ricks about intimate details of her sex life cannot be justified as a necessary test of her trustworthiness.

For these reasons—and especially in view of the large amount of other favorable defense evidence on the same topic—we conclude that the direct evidence of Mrs. Ricks' past sexual activity was not relevant to the resolution of the issues in this case: It simply was too remote.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COX concurs.

Judge SULLIVAN concurs in the result.