UNITED STATES, Appellee

v.

Antonio SANCHEZ, Airman, U.S.
Air Force, Appellant.

No. 95–0008.
CMR No. 30614.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 13, 1995.

Decided July 12, 1996.

§ 920. The convening authority approved the sentence of a dishonorable discharge, 36 months' confinement, partial forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review[1] affirmed the findings and sentence. 40 MJ 782 (1994). We granted review on the following issue:[2]

> WHETHER THE MILITARY JUDGE ERRED BY FINDING THE DEFENSE OFFER OF PROOF, REGARDING THE COMPLAINANT'S PRIOR SEXUAL BEHAVIOR, TO BE INSUFFICIENT UNDER MIL.R.EVID. 412(c)(2).

We hold that the offer of proof by defense counsel was insufficient to support admissibility under Mil.R.Evid. 412(b), Manual for Courts Martial, United States (1994 ed.).[3] Thus, appellant was not entitled to a hearing under Mil.R.Evid. 412(c)(2).

For Appellant: *Captain Del Grissom* (argued); *Colonel Jay L. Cohen* and *Captain Michael L. McIntyre* (on brief).

For Appellee: *Colonel Jeffery T. Infelise* (argued); *Colonel Thomas E. Schlegel, Major LeEllen Coacher, Captain Timothy G. Buxton* (on brief).

*Amicus Curiae urging reversal: Nash Long* and *Joseph Watson, Jr.* (2d-year Law Students) (argued); *Charles Ogletree* (on brief)—For Harvard Law School Federalist Society.

*Opinion*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC

## FACTS

Appellant was "casual" friends with the victim, a female fellow servicemember. On several occasions, he talked and danced with her, and took her home from the Non–Commissioned Officers' (NCO) Club. Once, she had rejected his attempts "to have a relationship with" him, knowing he was married. In the early hours of May 2, 1992, appellant drove the victim from the NCO Club to her barracks. Appellant followed her into her room uninvited while still conversing with her. After a few moments of small talk, the victim suggested it was time for appellant to leave. Appellant instead locked the door, turned off the lights, and began to make sexual advances toward her. She pushed him away and told him that she was "going to take a shower" and that he should be gone when she finished. The victim entered the bathroom, locked the door, and took a show-

---

1. *See* 41 MJ 213, 229 n. * (1994).

2. We heard oral argument in this case at the Ames Courtroom, Austin Building, Harvard Law School, as part of our Outreach Program on October 13, 1995, without objection from the parties involved. *See United States v. Raymond,* 38 MJ 136, 137 n. 1 (CMA 1993).

3. The current version of the Manual for Courts–Martial is the 1995 edition. It will be cited

where it reflects the version of the cited provision applicable at trial. Where the 1995 edition contains a new version of a provision, the 1994 edition will be cited if it contains the applicable language. If neither the 1994 nor the 1995 edition contains the version applicable at trial, the Manual for Courts–Martial, United States, 1984 (Change 1, 2, 3, 4 or 5) will be cited as applicable.

er. After dressing in a nightgown, underwear, and a bathrobe, she re-entered the room to find appellant still present. Before the victim could show appellant out of the door, he attacked her and removed her underwear as she struggled. Finally, he wrestled her on to her bed and raped her. After the rape was completed, appellant held the victim to his side until he fell asleep. She then called a male servicemember friend, Sergeant (Sgt) Brooks, and asked if she could come to his room. Thereafter, she left her room, went to his room, and told him that appellant would not leave her room. Sgt Brooks called the security police who apprehended appellant in the victim's room.

Trial defense counsel made a pretrial motion for admission of certain information regarding the victim's prior sexual history. Because it was not clear what evidence the defense wanted to admit, the judge asked for an offer of proof from the defense before he would rule. Trial defense counsel responded that their motion was based on an exception to Mil.R.Evid. 412, in that the evidence sought to be admitted was "constitutionally required." Counsel then stated that witnesses would be expected to testify as follows:

—The victim had engaged in "one-night" stands with five to ten other airmen and that 60%–80% of the time, the liaisons originated at the NCO Club.

—After such one-night stands, the victim would call friends and express remorse and doubts "about her own self-worth."

—The victim engaged in similar activity with Sgt Brooks within a week of the incident in question.

—The victim went to Sgt Brooks' barracks room after the incident for "solace" but "did not report the rape to him."

Counsel then stated that appellant would testify that he had taken the victim home on previous occasions and "they had kissed at the door." He would further testify that he and the victim had also had prior discussions regarding their attraction for each other. In response to her challenge earlier when she said that he was not ready for her yet,

appellant said that, on the night in question, she said he was "ready for her."

Upon questioning by the judge, trial defense counsel confirmed that none of the proffered evidence included any allegations of rape. The judge also noted that the proffer was incomplete because there was no indication as to when the victim was reputed to have had the five to ten one-night stands. Counsel responded that they had occurred within the last 6 to 8 months.

The judge found that the defense had "made an insufficient showing" to satisfy "any constitutional requirement" for admission of the evidence concerning other airmen. He found that the proffer as to how many one-night stands and where they originated was imprecise. Further, the judge found that the proffered evidence was focused on the victim's credibility and that credibility alone "does not flow well." Finally, the judge found that none of the information related to appellant's "understanding of the evening." The judge then stated that both the Government and the defense were free to raise the issue concerning this excluded evidence at a later point in the trial.

However, after considering the proffer regarding the prior relationship of appellant and the victim, the judge held that an inquiry into their relationship including "discussions of potential sexual activity" with each other was admissible. The judge also ruled that he would allow cross-examination of Sergeant Brooks concerning his relationship with the victim so as to establish any bias Brooks may have had.

Appellant appealed this issue to the Court of Military Review, which held that the judge had not abused his discretion "in finding the offer of proof insufficient." 40 MJ at 785. Specifically, that court found that the verbal offer was "vague and indefinite" and that there had been no prior similar claims of rape. The court also noted that the judge had correctly assessed the offer of proof without requiring a hearing of the evidence and that the judge had allowed both sides to raise the issue later in the trial. *Id.* at 784. Finally, the court noted that the only purpose for offering the evidence would have

been to show either that the victim had consented on this occasion because she had consented before (with other men) or that the victim's "prior sexual acts cast doubt on her credibility"; holding neither purpose to be a valid reason for admission of the evidence. *Id.* at 785. We agree.

## DISCUSSION

The issue in this case is admissibility of the past sexual behavior of the victim under Mil. R.Evid. 412. That rule is commonly called the "rape-shield" rule, but it really is a rape-victim shield rule because it is designed to protect a victim's privacy and thereby protect them from further trauma. Mil.R.Evid. 412 involves two key components: procedural rules and evidentiary rules. Mil.R.Evid. 412(c)[4] sets forth the procedural rules, and Mil.R.Evid. 412(a) and (b)[5] set forth the evidentiary rules.

**4.** The version of Mil.R.Evid. 412(c), Manual for Courts–Martial, United States (1994 ed.), in effect at the time of trial provided:

(1) If the person accused of committing a nonconsensual sexual offense intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall serve notice thereof on the military judge and the trial counsel.

(2) The notice described in paragraph (1) shall be accompanied by an offer of proof. If the military judge determines that the offer of proof contains evidence described in subdivision (b), the military judge shall conduct a hearing, which may be closed, to determine if such evidence is admissible. At such hearings the parties may call witnesses, including the alleged victim, and offer relevant evidence. In a case before a court-martial composed of a military judge and members, the military judge shall conduct such hearings outside the presence of the members pursuant to Article 39(a).

(3) If the military judge determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the military judge specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

By operation of Mil.R.Evid. 1102, the military has now adopted the new version of Fed.R.Evid. 412 which became effective December 1, 1994.

## Procedural Rules

As to the procedural rules, Mil. R.Evid. 412(c)(2) requires an "offer of proof," commonly called a proffer. If this proffer "contains evidence" falling under one of the exceptions, "the military judge shall conduct a hearing ... to determine if such evidence is admissible." The reason for the hearing, which may be closed, *see Carlson and Ryan–Jones v. Smith,* 43 MJ 402 (1995)(summary disposition), is to serve as a check on questionable proffers in order to protect victims and, if the evidence is eventually ruled inadmissible, to have a record for appeal. However, where the proffer is insufficient on its face, there is no requirement for a hearing. To require a hearing when the proffer has not met the threshold requirements for a hearing would undermine the rationale for Mil.R.Evid. 412(a) and (b)—to protect victims against humiliating, embarrassing, and harassing questions. *See* Manual for Courts–Martial, United States (1994 ed.) at A22–34;

*See* Pub.L. No. 103–322, § 40141, 108 Stat.1918–19 (1994); 114 S.Ct. (1st Interim vol.) 700–09; 28 USCA Federal Rules of Evidence 190–94 (1995 Cum.Supp.).

**5.** The version of Mil.R.Evid. 412(a) & (b), Manual, *supra* (1994 ed.), in effect at the time of trial provided:

(a) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, reputation or opinion evidence of the past sexual behavior of an alleged victim of such nonconsensual sexual offense is not admissible.

(b) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

(1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted; or

(2) admitted in accordance with subdivision (c) and is evidence of—

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior with respect to which the nonconsensual sexual offense is alleged.

see, e.g., Tague v. Richards, 3 F.3d 1133, 1139 (7th Cir.1993). This prevents the hearing from being used as a discovery device by the proponent.

■ The proponent's rights are also protected because the proffer is not tested by direct and cross-examination, and all balancing under the Constitution or under the Rules of Evidence must be tilted in the proponent's favor. Thus, here we accept as true the factual assertions in appellant's proffer.

### Evidentiary Rules

■ The evidentiary rules, Mil.R.Evid. 412(a) and (b), must be read in connection with other relevance rules in Section IV of the Military Rules of Evidence. Mil.R.Evid. 401 and 402 provide that evidence which has "any tendency to make the existence of any fact ... more or less probable than it would be without the evidence" is legally relevant and admissible. United States v. Saipaia, 24 MJ 172, 175 (CMA 1987). Of course under Mil.R.Evid. 403, evidence which is both legally and logically relevant "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice."

Further, even if evidence is admissible under Mil.R.Evid. 401 through 403, Mil.R.Evid. 412 operates as a rule to exclude "reputation or opinion evidence" unless it falls within one of that rule's three exceptions. These exceptions are as follows: (1) evidence offered by the accused to show that he "was not ... the source of semen or injury"; (2) evidence of the victim's "past sexual behavior with the accused" when offered to show the victim's consent; or (3) evidence that "is constitutionally required to be admitted." Mil.R.Evid. 412(b), Manual, supra (1994 ed.).

■ In addition to protecting the victim from humiliating and embarrassing questions, Mil.R.Evid. 412 is also designed to preclude introduction of evidence as to the victim's reputation for chastity or evidence of specific sexual acts, unless those acts (Mil. R.Evid. 412(b)(2)(B)) are "constitutionally required to be admitted" (Mil.R.Evid. 412(b)(1)). Reputation evidence is based on what an individual has heard in a community. It may be the result of rumor, gossip, or forgotten incidents. A victim's reputation for lack of chastity is inadmissible. Prior to the rape-shield rules, "[d]efense lawyers were permitted great latitude in bringing out intimate details about a rape victim's life. Such evidence quite often serves no real purpose and only results in embarrassment to the rape victim and unwarranted public intrusion into her private life." 124 Cong. Rec. 34912 (1978).

### Sixth Amendment

■ The issue here is whether the excluded defense evidence "is constitutionally required to be admitted" under Mil.R.Evid. 412(b)(1).

The Sixth Amendment to the U.S. Constitution provides in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him; [and] to have compulsory process for obtaining witnesses in his favor....

Application of this provision has been discussed by the Supreme Court and by this Court. See, e.g., United States v. Woolheater, 40 MJ 170, 173 (CMA 1994), citing numerous Supreme Court cases.

■ The Michigan "rape-shield" rule in Michigan v. Lucas, 500 U.S. 145, 150, 111 S.Ct. 1743, 1746–47, 114 L.Ed.2d 205 (1991), was recognized as a valid exercise of legislative power. Mil.R.Evid. 412, which is similar to the Michigan "rape-shield" rule, is likewise a valid exercise of Presidential power because the Supreme Court has said that "rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." 500 U.S. at 150, 111 S.Ct. at 1746–47. But, in determining admissibility, there must be a weighing of the probative value of the evidence against the interest of shielding the victim's privacy. "To the extent that it [a "rape-shield" rule] operates to prevent a criminal defendant from presenting relevant evidence, the defendant's ability to confront adverse witnesses and present a defense is diminished. This does not necessarily render the statute unconstitutional." Id. at 149, 111 S.Ct. at 1746.

In *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Court held that excluding another's confession to the same murder as charged was a violation of the Sixth Amendment. The Supreme Court reversed Chambers' conviction, emphasizing that the excluded evidence was "critical to Chambers' defense." *Id.* at 302, 93 S.Ct. at 1049; *see also United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)(Evidence is "critical" if it is "relevant and material, and ... vital to the defense."). In *Chambers* the Court noted that the testimony of McDonald, the person who confessed to the crime and then repudiated that confession, was an integral part of the prosecution's case. To prohibit the defendant from calling witnesses to whom McDonald had confessed to the very crime at issue undermined the defense's case. For this reason Chambers' conviction was reversed.

Likewise in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court held that it was improper to prohibit Davis from attempting to cross-examine the prosecution's key witness (Green) concerning "possible biases, prejudices, or ulterior motives of the witness." *Id.* at 316, 94 S.Ct. at 1110. Davis had sought to impeach Green's character by showing that he was on probation and in effect had only identified Davis as the individual who committed the crime in order to shift blame away from himself. In essence, the Court recognized the role of truthfinding in criminal trials and asserted that this outweighed the state interest in an outdated common-law-voucher rule or in not revealing juvenile convictions.

In *United States v. Gray*, 40 MJ 77, 80 (1994), this Court recognized that there may be certain circumstances where there is a constitutional right to admission of evidence of the victim's past sexual behavior. This Court held in *Gray* that it was error not to admit evidence that the 9–year–old victim was sexually active. That evidence of previous sexual activity and the resulting knowledge beyond her years was constitutionally required to be admitted since it would explain her advances towards appellant and support his version of the facts.

There are a number of instances where the evidence would be constitutionally required, *e.g.*, when the victim's sexual history shows a motive to fabricate the charge, *United States v. Dorsey*, 16 MJ 1, 4 (CMA 1983); or when "the rape charge might be used by the victim to explain her pregnancy, injury or, in the case of a minor, an all-night absence from home." F. Gilligan and F. Lederer, *Court–Martial Procedure* § 20–32.32(b) at 837 (1991)(footnotes omitted). Or, as in *Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988), evidence may be constitutionally required when the victim has a motive to testify falsely to explain to her boyfriend why she was with another individual. None of these reasons were present in appellant's proffer.

Instead, this case is similar to *United States v. Greaves*, 40 MJ 432 (CMA 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 907, 130 L.Ed.2d 790 (1995), in which then-Judge Cox stated that "it is clear that appellant wanted the court members to project, along with him, that O was in fact a prostitute or at least an extremely 'loose' woman." In *Greaves*, all appellant knew "was that O worked at a Japanese bar, dressed provocatively, and made good money." 40 MJ at 437. This was irrelevant to whether O had actually consented to sexual relations with Greaves.

## CONCLUSION

Here, the defense proffered that, because of the victim's alleged one-night stands, she would have consensually engaged in sex with appellant. Simply because a woman consents to sexual relations with one person does not affect the probabilities that she consented to sexual relations with appellant. This proffer is precisely what the so-called "rape-shield" rule is designed to exclude. If more is added to the equation, however, such as prior acts of the alleged victim which closely resemble his version of what happened, then that evidence may be admitted. *See, e.g., United States v. Jensen*, 25 MJ 284 (CMA 1987).

█ Likewise, where the sexual conduct is so particularly unusual and distinctive as to

verify the defendant's version, there will be a constitutional requirement to admit the evidence. *Winfield v. Commonwealth*, 225 Va. 211, 301 S.E.2d 15, 19 (1983).

The evidence presented by the defense in its proffer did not "closely resemble" the acts in this case and was not unusual or distinctive. Thus, the evidence was not necessary, critical, or vital so as to constitutionally require admission under Mil.R.Evid. 412(b)(1).

We hold that the proffers concerning the five to ten one-night stands and a one-night stand with another individual were not constitutionally required to be admitted.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge COX concurs.

SULLIVAN, Judge (concurring in the result):

Appellant's court-martial occurred in March of 1993. The version of Mil.R.Evid. 412, in effect at the time of appellant's trial, was carried over in Mil.R.Evid. 412, Manual for Courts–Martial, United States (1994 ed.). It states in pertinent part:

(b) Notwithstanding any other provision of these rules or this Manual, in a case in which a person is accused of a nonconsensual sexual offense, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence other than reputation or opinion evidence is—

(1) admitted in accordance with subdivisions (c)(1) and (c)(2) and is constitutionally required to be admitted;

or

(2) admitted in accordance with subdivision (c) and is evidence of—

(A) past sexual behavior with persons other than the accused, offered by the accused upon the issue of whether the accused was or was not, with respect to the alleged victim, the source of semen or injury; or

(B) past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behav-

ior with respect to which the nonconsensual sexual offense is alleged.

(c)(1) If the person accused of committing a nonconsensual sexual offense intends to offer under subdivision (b) evidence of specific instances of the alleged victim's past sexual behavior, the accused shall serve notice thereof on the military judge and the trial counsel.

(2) The notice described in paragraph (1) shall be accompanied by an offer of proof. *If the military judge determines that the offer of proof contains evidence described in subdivision (b),* the military judge shall conduct a hearing, which may be closed, to determine if such evidence is admissible. At such hearings the parties may call witnesses, including the alleged victim, and offer relevant evidence. In a case before a court-martial composed of a military judge and members, the military judge shall conduct such hearings outside the presence of the members pursuant to Article 39(a).

(3) If the military judge determines on the basis of the hearing described in paragraph (2) that the evidence which the accused seeks to offer is relevant and that the probative value of such evidence outweighs the danger of unfair prejudice, such evidence shall be admissible in the trial to the extent an order made by the military judge specifies evidence which may be offered and areas with respect to which the alleged victim may be examined or cross-examined.

(Emphasis added.)

The in-camera-hearing provision for determining admissibility of this evidence was designed to protect the alleged victim. The Fourth Circuit in *Doe v. United States,* 666 F.2d 43, 45–46 (1981), described the purpose of a similar in-camera-hearing requirement in Fed.R.Evid. 412(c)(2)(1978), as follows:

Rule 412 places significant limitations on the admissibility of evidence concerning the past sexual behavior of a rape victim. The rule provides the additional safeguard of a hearing in chambers to determine the admissibility of such evidence. These provisions were adopted "to protect rape vic-

tims from the degrading and embarrassing disclosure of intimate details about their private lives." 124 Cong.Rec. at [34912] (1978). To effectuate this purpose, subsections (c)(1) and (2) of the rule require that rape victims receive notice of the evidentiary hearing and a copy of the defendant's motion and offer of proof. Additionally, subsection (c)(2) makes provision for the victim's testimony at the evidentiary hearing.

The text, purpose, and legislative history of rule 412 clearly indicate that Congress enacted the rule for the special benefit of the victims of rape....

In this light, if the defense's proffer on its face fails to contain evidence whose admission might reasonably be considered "constitutionally required," no hearing in-camera is required. *See* 23 Wright & Graham, *Federal Practice and Procedure: Evidence* § 5391 at 619–21 (1980); *see also Wright v. State*, 513 A.2d 1310, 1314–15 (Del.1986). I agree with the court below that the absence of evidence of prior false complaints by the victim fatally undermined appellant's proffer on this question. *See generally United States v. Powers*, 59 F.3d 1460, 1470 (4th Cir.1995). Broad speculation on the scope of this rule in other situations need not be addressed in this case.

EVERETT, Senior Judge, with whom GIERKE, Judge, joins (concurring in the result):

In my view, this case—appellant's story, as well as his theory of defense and how appellant believed that the proffered evidence might have supported that theory—is somewhat more complicated and subtle than the lead opinion reflects. Accordingly, I write separately in order to briefly develop these matters and, at the same time, to explain how I believe that appellant's proffer fell short of the mark to constitutionally compel admission of the contested evidence.

Appellant's version of events was succinctly stated in the reported opinion of the court below as follows:

> Appellant testified they engaged in consensual sex several times including once when she was in the female superior posi-

tion. He said she then took a shower and when she finished she started to question him, "trying to put this guilt trip on me" because he was married. He told her their sex meant nothing to him whereupon she became upset. He went over to the bed where she was sitting, lay down beside her fully clothed, and fell asleep until awakened by the SPs [Security Police].

40 MJ 782, 783 (1994). Defense counsel tied this story into the defense theory of fabrication during his closing argument on findings to the military judge, as follows:

> [T]he defense theory in this case, what we know from Airman Sanchez' testimony, is they had this consensual sex, that she went and took her shower, and when she came out and Airman Sanchez was dressed and looked like he was ready to go, she decided that she did, perhaps, feel a little guilty after all for bringing him home with her and consenting to this sex. That, in fact, she felt perhaps that she did not want the one-night stand, even though part of her wanted it, by the time she had had a shower, perhaps those feelings in her own body or her own mind had overcome her that perhaps this wasn't the best thing for me to do. And she started an argument with Airman Sanchez as he was putting his clothes on; started haranguing him about his marriage, his marital vows, and "Why did you do this to me?" and "How could you do this to your wife? Don't you feel bad at this time?" And because Airman Sanchez told her, "It just happened, it was nothing," you know, "It's not a long-term thing, it's just the one night, it's not going to happen again. What's the big deal?" That was not the answer that she was hoping to hear. And indeed, "Hell hath no fury like a woman scorned." And when she heard these words from Airman Sanchez confirming what she knew about herself, Your Honor, that's when she decided, that's when she turned her thoughts about Airman Sanchez, and she started dealing with her own demons inside her....

Against this backdrop, appellant had sought to introduce the challenged evidence concerning the victim's previous one-night

182

stands and her reaction following each of them. This excerpt from the opinion below fully explains appellant's proffer in this regard:

> The written offer of proof stated that the complainant was "involved in a number of sexual 'one night stands' with numerous other airm[e]n.... These liaisons frequently caused her, as in this case, to be emotionally upset and/or depressed/concerned almost immediately thereafter...." The defense stated that these incidents involved 5–10 other airmen and 60–80 percent began at the NCO [Non–Commissioned Officers] Club. The defense indicated OD [the victim] would thereafter call or talk to friends and acquaintances about her remorse and wondering about her own self-worth. The written offer of proof suggested a similar pattern with appellant when she found out this was another "one night stand." The defense brief argued these feelings of anger and guilt caused her to concoct "a rape story to cover herself from further allegations of easy virtue, and reacted by making herself a victim, not a responsible adult when officials, like the SPs and AFOSI [Air Force Office of Special Investigations], became involved due to her [other] sexual partner's unexpectedly alerting the police that A1C Sanchez was asleep in [OD's] room." ...

40 MJ at 783–84.

Thus, the defense theory, which was consistent with appellant's version of their relationship, was that the victim was a woman with a fragile ego; that her shaky self-image was attributable directly to having been used by five to ten men as a one-night stand; that she had seen appellant as different because of their friendship; that when appellant himself demeaned their physical liaison immediately upon its completion, she felt all of the guilt and dirt that she had felt previously in similar circumstances; and when her boyfriend unexpectedly inserted the police into the mix, she fabricated her claim of rape in order to deflect these fresh blows to her ego—indeed, this time, blows that would be in a public context.

Although defense counsel never used the magic word of "motive" in his proffer, that most clearly is what he argued as the basis of admissibility—specifically, that the victim had a motive to fabricate her claim of rape, which in turn went to the heart of her credibility as a witness. As the lead opinion recognizes (44 MJ at 179), motive to fabricate a charge is a basis that this Court has recognized will constitutionally compel admission of evidence that otherwise would be excluded under Mil.R.Evid. 412. See, e.g., United States v. Williams, 37 MJ 352, 360 (CMA 1993); United States v. Dorsey, 16 MJ 1, 7 (CMA 1983); accord Olden v. Kentucky, 488 U.S. 227, 230, 109 S.Ct. 480, 482, 102 L.Ed.2d 513 (1988).

That said, however, the question remains whether appellant's proffer was adequate to show support for his theory. He proffered evidence that five to ten men previously had used the victim as a one-night stand and that sixty to eighty percent of those incidents had originated at the NCO club; and he proffered evidence that the victim had expressed guilt and remorse to her friends after such incidents. He proffered no evidence, however, that such blows to her ego might cumulate so that, with one too many, she would respond psychologically by denying her responsibility and instead asserting rape. Without a proffer of such evidence, say, from an expert witness, then it is mere speculation—indeed, curious speculation at that—that the victim would accuse appellant of rape when she took no similar retaliation against other similarly situated men before him.

The court below focused on just this point. After noting that "[t]here was no proffer of expert testimony to support this unique theory as to why the victim would have a motive to lie[,]" 40 MJ at 784, Judge Schreier wrote:

> The defense proffer does not describe a commonly understood motive to lie such as revenge or to place blame on another. See United States v. Saipaia, 24 MJ 172 (CMA 1987). When a motive is commonly understood and obvious from the facts asserted, it is unnecessary for counsel to produce expert testimony. Many cases have allowed this evidence without expert testimony. See United States v. Colon–An-

*gueira,* 16 MJ 20 (CMA 1983); *United States v. Dorsey,* 16 MJ 1 (CMA 1983). However, when the proffered motive is highly speculative and not one commonly understood, expert testimony is essential to establish the relevance between the motive to lie and the prior consensual sexual behavior. *See United States v. Ferguson,* 14 MJ 840 (ACMR 1982)....

40 MJ at 785.

On this basis, then, I agree with the lead opinion that the military judge did not abuse his discretion in declining to hold a hearing on admissibility of the evidence in question. *See* Mil.R.Evid. 412(c), Manual for Courts-Martial, United States (1994 ed.). Simply stated, appellant's theory was clear; however, without proffered expert testimony, the relevance of the proffered evidence of prior sexual activity to prove that theory was too speculative to trigger a need for a hearing. Accordingly, I concur in affirming the decision below.