UNITED STATES, Appellee,

v.

Sergeant Alix LAUTURE United States Army, Appellant.

ARMY 9501530.

U.S. Army Court of Criminal Appeals.

24 June 1997.

For Appellant: Captain Mark A. Bridges, JA (argued); Major J. Frank Burnette, JA (on brief); Major Leslie A. Nepper, JA.

For Appellee: Captain Robert F. Resnick, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Captain Joanne P. Tetreault, JA (on brief).

Before COOKE, TOOMEY, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT.

COOKE, Chief Judge:

In a contested trial before a military judge sitting alone as a general court-martial, appellant was found not guilty of rape, but guilty of the lesser included offense of indecent assault, and guilty of adultery, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E1. The case is before us for review under Article 66, UCMJ.

Appellant contends that the military judge erred by excluding evidence of a previous act of adultery by the victim. Specifically, appellant contends that, notwithstanding the general prohibition in Military Rule of Evidence 412 [hereinafter Mil. R. Evid.] against admitting evidence of other sexual behavior by the alleged victim of a sexual offense, the evidence in this case was constitutionally required. Appellant also contends that the evidence is factually insufficient to support the finding of guilty of indecent assault, and that the sentence is inappropriately severe.

We disagree and affirm. Appellant's first assignment of error warrants discussion.

## I. FACTS

At trial, defense counsel sought to introduce evidence of a previous act of adultery by the victim, Specialist (SPC) F. Defense counsel proffered evidence that SPC F had committed adultery approximately two years earlier and that she had "gone through a process in the Mormon church whereby she has been 'cleansed' from this incident and it [has been] treated by her faith as if it never happened."[1]

Defense counsel advanced two reasons for admissibility. First, he submitted that it supported a mistake of fact defense because appellant was aware of this prior act of adultery. Therefore, when SPC F resisted his invitations to enter a relationship by saying, among other things, "I'm married," appellant had reason to believe that this did not completely foreclose the possibility of acceptance of his advances. Second, defense counsel argued that the prior incident gave SPC F a motive to lie—apparently contending that her prior adultery and the subsequent "cleansing" process would make it difficult for her to admit, to her husband and to her church, another act of adultery.

Trial counsel argued that such evidence was irrelevant and inadmissible. He further contended that, if anything, the "cleansing" process would most likely "provide[ ] her a motive not to come forward and say anything at all about this." He suggested that this evidence might be more beneficial to the government than the defense. Defense counsel did not respond to this characterization.

The military judge excluded the evidence of the prior adultery. He found that the defense failed to show sufficient relevance or probative value. The judge informed the defense, however, that he would permit inquiry into the effect of SPC F's religious beliefs on her willingness to admit she consented to appellant's advances.

At trial, SPC F testified that she had known appellant for about a year. Appellant frequently flirted with her, asking for hugs and making other suggestive comments. She consistently rejected these suggestions, although not forcefully or bluntly; in fact, she often smiled or joked with appellant on these occasions. Occasionally she mentioned that she was married when she rejected appellant's advances. Once, when she was very happy about receiving an award, she responded to appellant's request and hugged him. This was the only occasion in which she granted one of appellant's frequent requests for a hug. She did not report appellant's comments or behavior toward her to anyone in a position of authority.

On a Saturday, SPC F was working alone in a presumably secured medical facility. She went to a break room to have a snack and watch television. Appellant, who was on duty in another medical section, entered the secured facility and the break room. The appellant and SPC F had exchanged pleasantries earlier in the day. They exchanged conversation and SPC F got up to go to the women's restroom to clean her uniform, because she· spilled something on it. As she got up to go, appellant said, "Don't I get a hug?" She replied, "No." Specialist F went into the women's restroom; as she was cleaning her uniform at a sink, appellant entered the women's restroom. Specialist F testified that this made her uncomfortable and that she said, "How . . . does it feel to be a man in a woman's bathroom?" Specialist F threw a paper towel away, and when she turned, appellant was standing within inches of her. Appellant pushed her against the wall and pinned her with his body. Appellant reached between her legs with one hand and with the other, unzipped SPC F's blouse. He fondled and kissed her breast and then effected intercourse with her. Specialist F said the she

---

1. Defense counsel raised this issue when SPC F was called to testify as the first prosecution witness on the merits, by asking that SPC F be advised of her rights against self-incrimination under Article 31, UCMJ. Defense counsel indicated that he intended to question SPC F about the prior act of adultery. The defense had not provided prior notice of its intent to inquire into this matter. The defense counsel became aware of the earlier act of adultery two days before trial, when the trial counsel notified him of it. Despite defense counsel's failure to provide timely notice of his intent to offer this evidence, the military judge considered the merits of the issue.

was "frozen" during this time. After she felt appellant penetrate her, she pushed him away and told him she did not want this to happen and to stop. Specialist F proceeded from the women's restroom, telling appellant not to touch her. She called a friend and reported that she had been raped.

The prosecution introduced evidence which reflected that SPC F had a tendency to "freeze" in stressful situations, and that her reaction was consistent with that of rape victims in other cases.

Appellant did not testify, but the defense endeavored to show, primarily through cross-examination of SPC F, that she did not manifest her lack of consent to the encounter with appellant, and that appellant reasonably believed that SPC F consented.[2] The defense did not attack SPC F's credibility; specifically, it did not inquire at all into SPC F's religious experience or beliefs, even though the military judge's earlier ruling allowed such inquiry. As noted above, the military judge found appellant not guilty of rape, but guilty of indecent assault and adultery.

## II. LAW

▬▬ Military Rule of Evidence 412 provides that, with certain exceptions, evidence of other sexual behavior by the alleged victim of a sexual offense is not admissible.[3] Several reasons underlie this exclusion. First, such evidence is often not relevant.[4] In particular, Rule 412 rejects the assumption, implicit in earlier rules, that simply because a person may have consented to sexual relations with other people, that person is more likely to have consented to sexual relations with an accused in a particular case. Second, Mil. R. Evid. 412 is intended to prevent unnecessary confusion or obfuscation of issues by excluding evidence "with great potential for distraction." Mil. R. Evid. 412 analysis at A22–35. Evidence of the victim's unchaste history, even though remotely relevant, may be misused by the fact-finder to conclude, for example, that whether or not the victim consented is not important because the victim "deserved it" or "asked for it."[5] Finally, Mil. R. Evid. 412 is also designed, much like certain privileges, to promote goals external to the truth finding process at trial. It is intended "to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" and to "en-

---

2. At trial, the defense never expressly contended that SPC F actually consented to the encounter with appellant. Instead, the defense focused on her failure to manifest lack of consent—a subtle distinction but, for reasons discussed below, an important one. It is noteworthy that in defense counsel's opening statement—made before the military judge excluded the evidence at issue here—the defense counsel emphasized the failure to manifest lack of consent and mistake of fact, and not whether SPC F consented in a subjective sense.

3. Military Rule of Evidence 412 was substantially amended, pursuant to a change in the corresponding Federal Rule of Evidence 412 and the operation of Mil. R. Evid. 1102. The effective date of the new Mil. R. Evid. 412 was May 29, 1995, about four months before trial in this case. It is not clear in the record of trial whether the parties were applying what was, at the time of trial, a relatively new change. Normally we would presume that they were; however, certain references made by defense counsel suggest that he, at least, was referring to the old rule. This does not affect our decision in this case, because the changes did not substantially affect the provisions, or their underlying purposes, at issue here. *See* Notes of Advisory Committee on proposed 1994 amendment, 28 U.S.C.S. Appx Rule 412 at 87 (Law.Co-op.1995). For the same reason, judicial decisions applying the earlier version of Rule 412 remain applicable.

4. Arguably Mil. R. Evid. 401 and 402, the basic rules of relevance, should suffice to address relevance. Mil. R. Evid. 412 and its counterpart, Fed.R.Evid. 412, were deemed necessary because of prior practice. STEPHEN SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL 560–61 (6th ed.1994). Historically, a victim of an alleged sexual offense was subject to extensive cross-examination on virtually his or her entire sexual history. *See* Manual for Courts-Martial, United States, 1969 (Rev. ed.), para. 153b [hereinafter MCM, 1969]; STEPHEN SALTZBURG ET AL., MILITARY RULES OF EVIDENCE MANUAL, 520 (3d. ed.1991). It is now recognized, and Mil. R. Evid. 412 reflects, that in many cases evidence of other sexual behavior of the victim is not relevant to whether that person was raped or sexually assaulted by an accused.

5. A limiting instruction can often prevent such misuse. *See, e.g., United States v. Dorsey*, 16 M.J. 1, 8 (C.M.A.1983). Therefore, this justification, alone, would not ordinarily justify exclusion of relevant evidence.

courage[ ] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Notes of Advisory Committee on proposed 1994 amendment, Fed.R.Evid. 412, 28 U.S.C.S. Appx 412 at 87.

Notwithstanding the general rule of inadmissibility, however, Mil. R. Evid. 412 does not foreclose all inquiry into other sexual behavior of the victim. The rule contains three important exceptions to the principle of exclusion. The third of these, "evidence the exclusion of which would violate the constitutional rights of the defendant," concerns us here. Mil. R. Evid. 412(b)(1)(C).[6]

■ A criminal defendant generally has the right, under the Fifth and Sixth Amendments to the Constitution, to introduce relevant, probative evidence in his defense. *See Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). This includes the right to cross examine witnesses fully. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis,* 415 U.S. at 316–17, 94 S.Ct. at 1110. *See also Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431; *Chambers,* 410 U.S. 284, 93 S.Ct. 1038; *United States v. Scheffer,* 44 M.J. 442 (1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 1817, 137 L.Ed.2d 1026 (1997); *United States v. Woolheater,* 40 M.J. 170 (C.M.A. 1994).

These rights are not absolute, however. "[W]e have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted." *Crane,* 476 U.S. at

690, 106 S.Ct. at 2146. "[T]he right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers,* 410 U.S. at 295, 93 S.Ct. at 1046. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. *See also Montana v. Egelhoff,* —— U.S. ——, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996); *Davis,* 415 U.S. 308, 94 S.Ct. 1105; *Washington v. Texas,* 388 U.S. at 23, n. 21, 87 S.Ct. at 1925, n. 21; *United States v. Burks,* 36 M.J. 447 (C.M.A.), *cert. denied,* 510 U.S. 866, 114 S.Ct. 187, 126 L.Ed.2d 146 (1993).

■ To be constitutionally required, evidence must be relevant. *United States v. Sanchez,* 44 M.J. 174 (1996); *United States v. Knox,* 41 M.J. 28 (C.M.A.1994), *cert. denied,* 513 U.S. 1153, 115 S.Ct. 1106, 130 L.Ed.2d 1072 (1995); *United States v. Greaves,* 40 M.J. 432 (C.M.A.1994); *United States v. Elvine,* 16 M.J. 14 (C.M.A.1983). Even if evidence meets the threshold for relevance, it may be excluded unless its importance outweighs the policies which support exclusion. *Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431; *Davis,* 415 U.S. 308, 94 S.Ct. 1105; *Chambers,* 410 U.S. 284, 93 S.Ct. 1038. This weighing has been described in a variety of ways. For example, evidence has been found to be constitutionally required where it: had a "strong potential to demonstrate the falsity" of a witness' testimony, *Olden v. Kentucky,* 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988); included facts "central to assessing" the reliability of a witness, *Van Arsdall,* 475 U.S. at 677, 106 S.Ct. at 1434; carried a "real possibility" of "serious damage" to the prosecution case, *Davis,* 415 U.S. at 319, 94 S.Ct. at 1111; was "critical" to the defense, *Chambers,* 410 U.S. at 302, 93 S.Ct. at 1049; was "very material," *United*

---

**6.** The second major subsection of Mil. R. Evid. 412, which should be "(b)" is printed "(B)" in MCM, 1995. This is an incorrect transcription from Fed.R.Evid. 412, from which it is derived. We refer to it as subsection (b).

*States v. Jensen,* 25 M.J. 284, 286 (C.M.A. 1987); or was "relevant, material, and favorable" to the defense, *United States v. Dorsey,* 16 M.J. 1 (C.M.A.1983).[7] Exclusion of evidence has been upheld where it was: "not necessary, critical, or vital," *Sanchez,* 44 M.J. at 180; "not relevant, material, or favorable," *Knox,* 41 M.J. at 31; or "too speculative and thus not relevant," *United States v. Pagel,* 45 M.J. 64, 70 (1996).

 As this plethora of standards suggests, whether evidence is constitutionally required under Mil. R. Evid. 412 is determined on a "case-by-case basis." *United States v. Buenaventura,* 45 M.J. 72, 79 (1996). Nevertheless, appellate decisions are consistent with the principles and purposes which underlie Mil. R. Evid. 412. Sexual behavior by the victim with others is not ordinarily admissible simply to show consent. The fact that the victim may have consented to or voluntarily engaged in other behavior of a sexual nature, standing alone, adds nothing to the likelihood that the victim consented to sexual activities with an accused. *See Greaves,* 40 M.J. 432. *See also United States v. Hicks,* 24 M.J. 3 (C.M.A.), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 55 (1987); *Elvine,* 16 M.J. 14. Similarly, such evidence often will not support a defense of mistake of fact as to consent, because, absent unusual circumstances, it does not render the "mistake" reasonable. *Greaves,* 40 M.J. 432. *But see United States v. Jensen,* 25 M.J. 284 (C.M.A.1987)(holding evidence of prior consensual sex between victim and co-defendant was admissible).

 On the other hand, evidence of other sexual behavior by the victim may be admissible when it demonstrates a motive by the victim to fabricate (such as the desire to protect a relationship with another). *See Olden,* 488 U.S. 227, 109 S.Ct. 480; *Williams,* 37 M.J. 352; *Dorsey,* 16 M.J. 1. *See also Sanchez,* 44 M.J. 174. It may also be admissible to show a pattern or to corroborate an accused's version of events or, in the case of young victims, to show other sources

of sexual knowledge. *Buenaventura,* 45 M.J. 72; *United States v. Gray,* 40 M.J. 77, 80 (C.M.A.1994). *See also United States v. Hurst,* 29 M.J. 477 (C.M.A.1990).

 Simply stating a valid purpose or theory of relevance is not sufficient to make evidence admissible, however. The proponent must demonstrate that the proffered evidence rationally supports the theory, and that the theory is significant to the outcome of the case. *Pagel,* 45 M.J. at 69–70; *Sanchez,* 44 M.J. 174; *Knox,* 41 M.J. 28. *See also United States v. Shaffer,* 46 M.J. 94 (1997). Thus, the proponent must show, first, that the logical link between the proffered evidence and the conclusion the proponent wants the factfinder to draw is more than remote or speculative. Second, the proponent must show that this conclusion could affect a significant issue in the case.

 We review the military judge's decision for an abuse of discretion. *Buenaventura,* 45 M.J. 72. In reviewing whether appellant's right to cross-examine the witness has been denied, we focus "on the particular witness, not on the outcome of the entire trial." *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. at 1435.

 Even if we find that the evidence should have been admitted, however, we may affirm if we are convinced the error was harmless beyond a reasonable doubt. *Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431; *United States v. Colon–Angueira,* 16 M.J. 20 (C.M.A. 1983). The factors we examine are: "[T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. *See also Olden,* 488 U.S. 227, 109 S.Ct. 480; *Colon–Angueira,* 16 M.J. 20.

---

**7.** Although subsequent decisions have referred to the "relevant, material, and favorable" test first described in *Dorsey,* it has been criticized. *See, e.g., United States v. Williams,* 37 M.J. 352, 361– 62 (C.M.A.1993) (Gierke, J., concurring, and Crawford, J., joined by Cox, J., concurring in the result).

## 800

### III. DISCUSSION

■ We find that the military judge did not abuse his discretion in excluding the evidence of the prior act of adultery by the victim in this case. Furthermore, we are satisfied that even if such exclusion was error, it was harmless beyond a reasonable doubt.

We have little difficulty resolving appellant's claim that his knowledge of SPC F's prior act of adultery supports his claim of mistake of fact. Consent to engage in sexual activity with one person does not, without more, give rise to a reasonable claim that consent is more likely with another. Specialist F's single act of adultery, over two years prior to the offenses here, gave rise to no reasonable inference that she would or did consent to sexual relations with appellant, and, therefore, provided no reasonable basis for any mistaken belief appellant may have harbored to the contrary. The fact that SPC F occasionally rejected appellant's advances with the explanation that she was married did not change this. Thus, for this purpose, the proffered evidence did not meet the minimum threshold of relevance.

■ A somewhat closer issue is presented on the question of motive to fabricate. A victim's sexual history may be relevant to establishing a motive to fabricate as to consent. *Olden*, 488 U.S. 227, 109 S.Ct. 480; *Williams*, 37 M.J. 352. We can appreciate that a person who has betrayed her vows to her husband and the tenets of her church by committing adultery might be somewhat more inclined than otherwise to lie about a subsequent sexual act with another in order to avoid having to face again her husband and church with similar facts. Therefore, we conclude that defense counsel's proffer met the minimum standard of relevance under Mil. R. Evid. 401.

■ Nevertheless, we find that the military judge did not abuse his discretion in excluding this evidence. The assertion that the prior incident gave the victim a motive to lie was speculative and remote. Defense

counsel did not proffer any additional circumstances surrounding the prior incident or the process and status of SPC F's reconciliation with her husband or the church, or other evidence, which might have added support to the inference that SPC F felt guilt which would give her a motive to lie. Furthermore, this evidence, on its face, had an even greater tendency to bolster SPC F's credibility. The defense counsel did not respond to trial counsel's apt observation that SPC F's prior experience would have rendered it more likely that SPC F would have made no report, rather than a false one, if she had voluntarily engaged in sexual relations with appellant.

Moreover, in the facts of this case, this evidence relating to SPC F's truthfulness was not significant to the defense theory of the case. The defense did not contend that SPC F actually consented to appellant's assault, and it did not attack her description of the acts involved. Rather, the defense attempted to show, using SPC F's description, that her lack of consent was not manifested and that, therefore, appellant was reasonably mistaken concerning her willingness to participate. Although evidence relating to lack of consent was not irrelevant, in this case, given the defense theory, lack of actual consent was not a significant issue.

Thus, this marginal showing of relevance was insufficient to overcome the policies of protecting privacy and preventing prejudice inherent in Mil. R. Evid. 412.

■ Even if the evidence of the prior adultery was erroneously excluded, we are convinced this error was harmless beyond a reasonable doubt. Even though SPC F was the key prosecution witness, the defense did not challenge or contradict her testimony on the points this evidence might have affected. Neither did the defense pursue other avenues of cross-examination fully available to it, including inquiry into SPC F's religious beliefs or the effect consensual sexual relations with appellant might have had on her marriage. Indeed, the defense largely relied on her description of the events in its (partially successful) effort to show mistake of fact.[8]

---

8. The manner in which this issue was raised also merits mention. The defense counsel initially raised the matter of the adultery not in a direct

attempt to admit it, but rather to try to preclude the victim's testimony altogether, through her invocation of Article 31, UCMJ, rights. Once this

Even if this evidence should have been admitted, the totality of the evidence that SPC F did not consent to the assault, and that appellant could not have reasonably believed she did, is overwhelming.[9] The evidence establishes that, immediately after SPC F denied appellant's request for a hug, she went into the women's restroom—a place almost universally viewed as a sanctuary from males, and certainly not one to which appellant could reasonably have considered himself welcome based on anything that had happened to that point. Nevertheless, appellant entered and, without invitation or inducement from SPC F, approached her, pushed her against the wall, placed one hand between her legs, and with the other, bared and fondled her breast. These facts are uncontroverted. Specialist F had no reasonable opportunity to consent or to manifest lack of consent before appellant indecently assaulted her. It defies credibility to suggest that she consented to these acts and lied about it later, or that appellant reasonably thought she was consenting.

The findings of guilty and the sentence are affirmed.

Senior Judge TOOMEY and Judge RUSSELL * concur.

---

long shot fell predictably wide of its target, the defense counsel did not pursue the avenues left open to him to attack SPC F's credibility.

9. We are not unmindful that the military judge acquitted appellant of rape. Although this does *not directly affect our analysis of the sufficiency of the evidence on the assault offense,* United States v. Watson, 31 M.J. 49 (C.M.A.1990), such related findings may have a bearing on harmless error analysis. *Olden v. Kentucky,* 488 U.S. 227, 233, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988). In this regard, we can reconcile the judge's findings by noting that it would not be inconsistent to conclude that the assault occurred before the victim could manifest any lack of consent and therefore without the victim's consent or a reasonable claim of mistake of fact as to same. However, the victim's failure to manifest her lack of consent orally or by physical resistance during the assault may have led the military judge to doubt whether the appellant was mistaken as to her consent when intercourse occurred. We express no opinion whether we agree with this theory; we note it only to demonstrate that this case is unlike *Olden,* where the jury's verdicts on multiple offenses "cannot be squared with the state's theory of the alleged crime." *Olden,* 488 U.S. at 233, 109 S.Ct. at 484.

* Judge James S. Russell took final action in this case prior to his reassignment.